IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

CMH HOMES, INC., and §
SOUTHERN ENERGY HOMES, INC., §
    Petitioners, §
 §
VS. §    CIVIL ACTION NO. 17-368
 §
MARK E. ELLER and LESLIE ELLER, §
    Respondents. §

**PETITION UNDER 9 U.S.C. §4**
**FOR ORDER COMPELLING ARBITRATION**

TO THE HONORABLE JUDGE OF SAID COURT:

      COMES NOW, Petitioners CMH HOMES, INC., doing business as Clayton Homes - Corpus Christi #1055 ("CMH") and SOUTHERN ENERGY HOMES, INC., successor-by-merger to Al/Tex Homes, Inc., formerly doing business as Southern Energy Homes of Texas ("Southern Energy"), petitioning the Court for an Order compelling Respondents MARK E. ELLER and LESLIE ELLER ("Ellers") to arbitrate all claims and disputes between the parties in accordance with their written agreement to arbitrate entitled "Binding Dispute Resolution Agreement," shown by Exhibit "A" hereto and incorporated herein by this reference, together with controlling law. In support of this Petition, CMH and Southern Energy jointly allege as follows:

**I. PARTIES**

1.    CMH is a Tennessee corporation with its principal place of business in Tennessee.

2.    Southern Energy is a Delaware corporation with its principal place of business in Alabama.

3.    The Ellers are residents and citizens of the State of Texas.

## II. JURISDICTION AND VENUE

4.      This Court has original subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the events giving rise to the causes of action took place in this District and Division and the Ellers are subject to the personal jurisdiction of this Court.

6.      There exists a justiciable controversy between the parties that is due to be arbitrated concerning:  (a) whether CMH and Southern Energy are liable to the Ellers in relation to a HUD-Code manufactured home purchased by the Ellers for which they have made complaints to CMH and Southern Energy, (b) the nature of the rights of the parties in relation to the aforementioned Binding Dispute Resolution Agreement shown by Exhibit "A" hereto ("Agreement"), and (c) whether the Agreement is enforceable by CMH and Southern Energy against the Ellers to require arbitration of this dispute.

## III. FACTS

7.      On or about February 25, 2016, the Ellers entered into an agreement for purchase and sale of a HUD-Code manufactured home with Serial Nos. SFW018083TX A & B, which transaction included the Agreement shown as Exhibit "A" hereto.  There is no genuine issue as to the authenticity or mutual assent evidenced by the Agreement. CMH was the retail seller of such home, and Southern Energy was its manufacturer.  The cash purchase price for the home was $130,000.00. See the Affidavit of David Lewandos attached hereto as Exhibit "B" and incorporated herein by this reference.

8.      CMH is an explicit signatory to Exhibit "A," and Southern Energy, as manufacturer, is an intended third-party beneficiary.  See *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).  Furthermore, Leslie Eller is bound by the arbitration provision of Exhibit "A" hereto, although the contract was explicitly signed only by her husband, Mark Eller.  See *Nationwide of Bryan, Inc. v. Dyer,* 969 S.W.2d 518 (Tex. App.—Austin 1998, no pet.).

9.      On or about September 9, 2016, the Ellers, through their counsel, made written claims and demands upon CMH and Southern Energy, shown by Exhibit "C" hereto, invoking the Texas Deceptive Trade Practices - Consumer Protection Act ("DTPA").  *Inter alia,* the Ellers have demanded rescission of the $130,000.00 product purchase.  In denial of such claims and demands, and in refusal of such rescission, on or about October 6, 2016, CMH and Southern Energy returned a response, shown by Exhibit "D" hereto, whereby the Agreement shown by Exhibit "A" hereto was enclosed.  The Ellers and their counsel thus have full notice of their commitment to binding arbitration in lieu of litigation.

10.     On or about July 11, 2017, and continuing on November 15, 2017, the parties agreeably mediated their disputes, consistent with DTPA §17.5051 and section C of Exhibit "A" hereto.  However, such mediation ended in impasse without any settlement.  At the conclusion of such mediation, counsel for the Ellers vowed to disregard the Agreement and to deny its efficacy and/or applicability to require arbitration.  This Petition is brought to secure the Ellers' adherence to the expectations and requirements of the Agreement since their claims against both CMH and Southern Energy are clearly encompassed by the Scope of the Agreement set forth in section A thereof.  The disputes between these parties should be arbitrated, not litigated.

## IV.  ARGUMENT AND AUTHORITIES

11.     Section 4 of the Federal Arbitration Act ("FAA") provides as follows:

> "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4.

12.     This Court has original subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states.

13.     The parties are diverse because the Ellers are residents and citizens of the State of Texas.  CMH is a corporate citizen of Tennessee, and Southern Energy is a corporate citizen of Delaware and Alabama.  The Ellers have not filed suit and thus there is no complaint or petition for this Court to review to determine the amount in controversy.  However, the $130,000.00 purchase price of the home is undisputed, and the Ellers' various complaints and issues lodged in Exhibit "C" hereto clearly include a threat of "rescission of the transaction to purchase the home."

14.     The home in question was constructed and certified in accordance with the national interstate building code (HUD-Code) prescribed by 42 U.S.C. §5403(d) and set forth in the Federal Manufactured Home Construction and Safety Standards at 24 CFR §3280 *et seq.*  With such federally-regulated construction performed by a Delaware/Alabama manufacturer, sold by a Tennessee retailer, and installed in Texas, the transaction giving rise to the Agreement shown by Exhibit "A" clearly involves interstate commerce, within the scope and meaning of the FAA.  The FAA establishes a "federal policy favoring arbitration" and applies to all transactions "involving commerce." *Moses H. Cone Memorial Hospital vs. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983).

## V. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, CMH and Southern Energy jointly pray for an Order of this Court enforcing the arbitration Agreement shown by Exhibit "A" hereto, and compelling the Ellers to resolve their disputes with CMH and Southern Energy, enunciated in Exhibit "C" hereto, in the environment of binding arbitration under the auspices of the American Arbitration Association and its Consumer Rules, pursuant to the terms of such Agreement. CMH and Southern Energy additionally pray for other and further general relief.

Respectfully submitted,

WELLS & CUELLAR, P.C.

By: _____
D. Brent Wells
State Bar No. 21140900
bwells@wellscuellar.com
James E. Cuellar
State Bar No. 05202345
Jeffrey D. Stewart
State Bar No. 24047327
440 Louisiana, Suite 718
Houston, Texas 77002
(713) 222-1281 Telephone
(713) 237-0570 Fax

7417x002.pad

1156638

## BINDING DISPUTE RESOLUTION AGREEMENT

The Parties (defined below) agree to resolve all disputes pursuant to the terms of this Binding Dispute Resolution Agreement (the "Agreement"). The Parties are defined as the buyer (whether one or more) who signs below (referred to hereinafter as "Buyer") and CMH Homes, Inc., its subsidiary(s) (e.g., CMH of KY, Inc.), and their/its agents, assignees, successors in interest, and employees (collectively referred to as "Seller"). Buyer and Seller agree that this Agreement also applies to and governs the rights of intended beneficiaries of this Agreement, who include the following additional Parties: (i) manufacturers of the Home (defined below); (ii) contractors, including, without limitation, contractors involved in delivery and set-up of Buyer's Home; (iii) title companies and closing attorneys involved in any transaction made in connection with Buyer's Home purchase; (iv) all who sign or benefit from the Contract (defined below); (v) anyone claiming an interest in the Home, (vi) property owners receiving a benefit from the Contract, the Home, or use of the Home, and (vii) any occupants of the Home (referred to hereafter collectively as "Beneficiaries") (Buyer, Seller, and Beneficiaries may be referred to herein as "Party" or "Parties").

A.   Scope of the Agreement: This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home (including, but not limited to, the Retailer Closing Agreement, any Purchase or Sales Agreement, buyer's order, supplemental invoice, and other instruments and agreements whereby Seller purports to convey or receive any goods or services to or from Buyer or Beneficiaries (collectively, the "Contract")), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity and enforceability of the Contract (collectively referred to as the "Claim" or "Claims"). Notwithstanding anything herein to the contrary, the jurisdiction of the Arbitrator, including objections with respect to the existence, scope, and validity of this Agreement, shall be determined solely by a court of competent jurisdiction, and not by the Arbitrator. The Parties agree that Claims must be brought on an individual basis and not on a representative basis as a class action, which involves the aggregation of similar individual Claims of Buyer, Beneficiaries, and/or other persons into a single proceeding. The Parties expressly agree not to arbitrate any Claims as a class action, a representative action, a collective action, or a private attorney-general action.

B.   Exclusion for Consumer Credit Transactions Secured by a Dwelling: Notwithstanding anything herein to the contrary, nothing in this Agreement shall be construed to require mandatory mediation or binding arbitration of any disputes arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling. Disputes arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling are specifically excluded from the definition of "Claim" or "Claims."

C.   Agreement to Mediate: All Claims that cannot be settled through direct discussions and negotiation shall be submitted first to mediation with a mutually agreeable mediator ("Mediation"). If the Parties cannot agree on a mediator within a reasonable time, then the Mediation shall be administered by the American Arbitration Association ("AAA") under its Home Construction Arbitration Rules and Mediation Procedures in effect at the time Mediation is requested (the "Rules"). A copy of the Rules may be obtained, free of charge, from the AAA, on the internet at www.adr.org, by calling 800-778-7879, or by writing to - American Arbitration Association, 120 Broadway, New York, NY 10005. The Parties agree to mediate in good faith. The Parties agree that information exchanged in the Mediation shall be held confidentially. The requirement of formally filing a Claim with a tribunal, to satisfy an applicable statute of limitations, shall be tolled during the mediation process, with said tolling period to begin on the date that any Party notifies the other(s) in writing of its intent to mediate (either through a mutually agreeable mediator or the AAA). The tolling period shall end on the date that either Party notifies the other in writing following mediation that the Parties have reached an impasse. In the event the Parties are not successful in resolving their dispute in mediation, then the Parties agree to submit their Claims to binding arbitration. Mediation of Claims is a mandatory condition precedent to arbitration or a court proceeding. An agreement to resolve the Claims in mediation shall be enforceable in any court having jurisdiction thereof.

D.   Agreement to Arbitrate: The Parties agree to mandatory, binding arbitration ("Arbitration") of all Claims that are not resolved in Mediation. Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present evidence to the Arbitrator, both in writing and through witnesses. Arbitration proceedings are less formal than court trials. Other rights that the Parties have in court may not be available in Arbitration. The information that can be obtained in discovery from each other or from third persons in Arbitration is generally more limited than in a lawsuit. An arbitrator will decide the case by issuing a written decision called an "award."



## EXHIBIT "A"

1156638

E.    Conducting Arbitration: Any Party to this Agreement may commence arbitration at any time following Mediation, subject to applicable statute of limitations and section "C." of this Agreement. The Arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and to the extent not otherwise preempted by the FAA, by applicable state laws, including common law; (b) this Agreement; and (c) the Rules. The Parties acknowledge and agree that the Home contains component parts limitation manufactured outside of the state where the Home is sold and delivered; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce. To commence arbitration, a Party must submit the dispute to AAA via mail, fax or through AAA's WebFile Service. If the terms of this Agreement and the Rules conflict, then the terms of this Agreement shall control to the extent of the conflict. The Arbitration will be conducted by a single person (the "Arbitrator") and selected in accordance with the "Level 3" selection process of the Rules irrespective of the amount of the Claims. The "Level 3" Administrative Fees and Arbitrator Compensation Schedule shall apply, irrespective of the amount of the demand or counter-demand asserted by any Party. The Arbitrator shall be impartial and his or her conduct shall be governed by the most current Code of Ethics for Arbitrators in Commercial Disputes, promulgated by the AAA and the American Bar Association. The Parties agree that any Arbitration commenced under this Agreement shall be administered under the Regular Procedures of the Rules, as opposed to the Expedited Hearing Procedures. With respect to the exchange of information, arbitration hearing, inspections, and interviews as defined by the Rules, the Parties agree that the Rules applicable to "Level 3" disputes shall apply to all Claims, irrespective of the amount of the Claims. At the election of the Parties (and at the expense of the electing Party or Parties), the Arbitration may be recorded and transcribed by a court reporter. Judgment upon the award rendered may be entered in any court having jurisdiction over the Parties to the award. The Parties agree that information exchanged in the Arbitration shall be held confidentially, and shall not be used in other arbitrations or court proceedings. Except as may be required by law, neither a Party, nor an Arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of all Parties. All statutes of limitation that would otherwise apply to Claims in a judicial action shall apply to the Arbitration of Claims under this Agreement. The Arbitrator shall apply applicable substantive law and shall honor assertions of privilege recognized at law and consider defenses that a court could consider. With respect to any award for punitive damages, the Arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding punitive damages, the Arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the Arbitrator must state the precise amount of any punitive damages award. Before the award becomes final, the Arbitrator must also conduct a post-award review of any punitive damages, allowing the Parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the Arbitration is located. Any ruling based on this post-award review must be set forth in writing with a reasoned explanation. The Arbitrator shall not have the power to depart from substantive law, including due process principles, in connection with an award. The Arbitrator's findings, reasoning, decision, and award shall be set forth in a detailed writing and must be based upon the laws governing this Agreement.

Except as expressly provided in section "K." of this Agreement, any Claim or counterclaim (including compulsory or permissive under law) of a party must be made in the Arbitration, and the failure to bring such Claim or counterclaim shall constitute a waiver of and a bar to bringing such Claim or counterclaim in a later Arbitration or action in court.

If Buyer or Beneficiaries have Claims against others (each, a "Third Party") related to or arising from Claims against the Seller(including, but not limited to (i) the design, construction, or manufacture of the Home, (ii) the advertising and/or sale of the Home, (iii) the delivery or the installation of the Home, and (iv) insurance covering the Home or Buyer (each, a "Related Claim")), then the Parties agree to consolidate the Arbitration of such Claims against Seller, brought on an individual basis, with the Arbitration of any and all Related Claims, brought on an individual basis, into one Arbitration to be governed by this Agreement, ***provided, however,*** that the Third Party must agree to be joined in the Arbitration of the Related Claims under this Agreement. The claims of Third Parties are not subject to the mandatory Mediation requirement set forth in section "C." above. If any Third Party does not agree to be joined in the Arbitration of its Related Claim, then Arbitration under this Agreement shall proceed without that Third Party. Buyer and Beneficiaries agree not to arbitrate any Related Claims as a class action, a representative action, a collective action, or a private attorney-general action. The consolidation of these Related Claims will be administered by the Arbitrator initially selected as described in this section "E."

F.    Fees and Costs: The fees and costs imposed by the Arbitration Administrator associated with the Arbitration, including the Arbitrator's fees, shall be paid in accordance with the Rules and this Agreement. Buyer and Beneficiaries may request that the Arbitration Administrator reduce or waive Buyer's and Beneficiaries' fees, or that Seller voluntarily pay an additional share of the fees and costs (however, such request does not obligate Seller to do so), based upon Buyer's and Beneficiaries' financial circumstances or the nature of such Claim. Unless inconsistent with applicable law or the Rules, the Parties will pay for their own arbitration costs (including fees and/or expenses of their own attorneys, experts, and witnesses), regardless of which party prevails in the arbitration.

1156638

G.    Location: The Arbitration will be conducted, in one or more hearings, at a place within the federal judicial district where Buyer's or Beneficiary's physical address is located, or in the federal judicial district within which a lawsuit between the Parties is pending and in which a motion to compel arbitration is made, or at any other place mutually acceptable to the Parties. If the Parties agree, then all or a portion of the Arbitration may be conducted by telephone conference. If the Parties cannot agree on the location of the Arbitration, then the Arbitrator shall have the power to decide where the Arbitration will be conducted.

H.    Collective Actions Waiver: The Parties expressly waive the right to participate as a representative or member in a class action, a representative action, a collective action, a private attorney-general action, or otherwise join the Parties' Claims, including those claims expressly excluded in section "B." of this Agreement, with those of any other person. The Parties agree that if the above limitation on proceedings is deemed to be unenforceable or interpreted to not prevent a collective or class action, then such collective or class action shall proceed in a court of law and not in arbitration.

I.    Joinder of Arbitrations: Except as provided expressly in section "E." of this Agreement with respect to the Arbitration of Buyer's and Beneficiaries' individual Related Claims, the Parties agree to waive any right to consolidate or join any individual arbitration with the arbitration of others.

J.    Enforcement and Appeal of Award: The award and judgment by the Arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the Parties. The Arbitrator's decision may be judicially reviewed on all grounds set forth in 9 U.S.C. § 10 and other applicable state law. Once final, an award may be enforced as a court judgment in accordance with federal or state law.

K.    Exceptions: Notwithstanding any other provision of this Agreement, the Parties agrees that Seller may use judicial process (filing a lawsuit): (a) to obtain possession of the Home where Seller has not been paid in full as agreed under the Contract or to otherwise enforce Seller's ownership interest in the Home, or enforce any related mortgage or deed of trust in Seller's name, and (b) to seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence, location, condition, or productive use of the Home or other property. Notwithstanding the Rules, the Parties also expressly agree that this Arbitration Agreement does not apply to any Claims where the amount in controversy is less than the jurisdictional limit of the small claims court in the jurisdiction where Buyer resides, *provided, however*, that the Parties agree that any such small claims Claim may only be brought on an individual basis and not as a class action. Bringing a court proceeding described in this section "K.", however, shall not be a waiver of any Party's right to compel Arbitration of any other Claims, including Buyer's counterclaim(s) in a suit brought by Seller.

L.    Severability: If it is determined that any paragraph or provision in this Agreement (with the exception of the Collective Actions Waiver in section "H.") is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Agreement and the remainder of this Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision or any other provision of the Contract or Agreement, if a court of competent jurisdiction determines the Collective Actions Waiver in section "H.", to be illegal, invalid, unenforceable, or interpreted to not prevent any of the actions set forth in section "H.", then the Parties agree that such waiver shall not be severed and that this Agreement shall be void in its entirety.

M.    Survival of Agreement: This Agreement will survive and continue in full force and effect notwithstanding assignment, assumption, rescission, cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, unless otherwise agreed to in writing by the Parties. In addition, the Parties understand and acknowledge that the rights afforded to Seller under this Agreement survive any assignment of the Contract by Seller and that Seller can enforce this Agreement in the event a Claim arises after the assignment of the Contract.

N.    Rules of Construction: If there is a disagreement on the interpretation of this Agreement, this Agreement shall be construed to require Mediation and Arbitration, rather than to defeat them, except for any disputes arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling, class actions, representative actions, collective actions and private attorney-general actions, which the Parties agree not to mediate or arbitrate. The Parties waive the rule of construction that requires a tribunal to construe a vague or ambiguous provision against the drafting party. This Agreement is the only agreement between the Parties regarding dispute resolution, and takes the place of and supersedes any other dispute resolution agreements to the extent they are inconsistent with this Agreement.

O.    Entire Agreement: This Agreement encompasses the entire agreement of the Parties with respect to the subject matter of this Agreement, and supersedes all previous understandings and agreements between the Parties, whether oral or written.

1156638

P.    Court Waiver:  For Claims subject to the terms of section "A.", the Parties hereby expressly and irrevocably waive any right to a trial by judge or jury. This waiver will remain enforceable even if any portion of this Agreement is otherwise found to be unenforceable. The Parties agree that this waiver is made knowingly, willingly, and voluntarily. This waiver does not apply to Claims filed in small claims court, pursuant to the provisions of section "K".

Q.    Jury Waiver:  With respect to those claims expressly excluded in section "B.", the Parties hereby expressly and irrevocably waive any right to a trial by jury. This waiver will remain enforceable even if any portion of this Agreement is otherwise found to be unenforceable. The Parties agree that this waiver is made knowingly, willingly, and voluntarily.

R.    NOTICE: BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ,  UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT. BUYER AND SELLER FURTHER INTEND TO DIRECTLY BENEFIT AND BIND ALL BENEFICIARIES TO THIS AGREEMENT. IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE PARTIES HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, WILLINGLY AND VOLUNTARILY.

DocuSigned by:
*Mark Eugene Eller*
0C0610CCC631482...                                    2/25/2016
Buyer        MARK EUGENE ELLER                        Date

Buyer                                                 Date

Buyer                                                 Date

Buyer                                                 Date

DocuSigned by:
*DAVID LEWANDOS*
F31FD868BADC472...                                    2/25/2016
Seller        CLAYTON HOMES  CORPUS CHRISTI           Date

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

CMH HOMES, INC., and       §
SOUTHERN ENERGY HOMES, INC.,  §
       Petitioners,          §
                          §
VS.                         §     CIVIL ACTION NO. 17-368
                          §
MARK E. ELLER and LESLIE ELLER,  §
       Respondents.        §

## ORIGINAL AFFIDAVIT OF DAVID LEWANDOS

STATE OF TEXAS      §
                   §
COUNTY OF NUECES   §

BEFORE ME, the undersigned authority, on this day personally appeared **DAVID LEWANDOS**, who, after being by me duly sworn, upon his oath deposed and stated as follows:

"1.    My name is David Lewandos and I am a resident of Nueces County, Texas. I am over twenty-one years of age and have never been convicted of a felony or a crime involving moral turpitude, nor have I ever been adjudged incompetent. I am duly competent and qualified in all respects to make this Affidavit. All of the facts set forth herein are true and correct and within my own personal knowledge. I am employed as a retail General Manager for CMH Homes, Inc. d/b/a Clayton Homes - Corpus Christi #1055 ("CMH"). CMH is a Tennessee corporation with its principal place of business in Tennessee.

"2.    I am a custodian of the business records of CMH. I am qualified to testify that the documents attached herewith as Exhibits "A," "C," and "D" are true and correct copies of the actual, genuine, original business records retrieved from the files of CMH. Exhibit "A" is our standard form of Binding Dispute Resolution Agreement, as electronically signed by Mark E. Eller; Exhibit "C" is a demand letter we received from the attorney representing the Ellers in this case; and Exhibit "D" is our response and denial to such demand. These records are kept by CMH in the regular course of business. It was, and is, the regular course of business of CMH for an employee or representative of such business, with personal knowledge, to make the records or to transmit information thereof to be included in such records; the records were made at or near the time of the acts, events, and transactions recorded therein, or reasonably soon thereafter. The documents attached herewith as Exhibits "A," "C," and "D" are exact duplicates of the originals.

## EXHIBIT "B"

"3.    On or about February 25, 2016, the Respondent Mark E. Eller entered into an agreement for purchase and sale of a HUD-Code manufactured home with Serial Nos. SFW018083TX A & B, which transaction included the Agreement shown as Exhibit "A" hereto. I was primarily involved personally in the transaction on behalf of CMH as the retail seller of such home.    There is no genuine issue as to the authenticity or mutual assent evidenced by the Agreement because I personally observed Mark E. Eller when he knowingly and voluntarily entered into such Agreement by his digital or electronic signature.    The cash purchase price for the home was $130,000.00.

"4.    On or about September 9, 2016, the Ellers, through their counsel, made written claims and demands upon CMH and Southern Energy, shown by Exhibit "C" attached herewith. The Ellers have demanded rescission of the $130,000.00 product purchase. In denial of such claims and demands, and in refusal of such rescission, on or about October 6, 2016, CMH and Southern Energy returned a response, shown by Exhibit "D" herewith, whereby the Agreement shown by Exhibit "A" herewith was enclosed. The Ellers and their counsel thus have full notice of their commitment to binding arbitration in lieu of litigation.

"5.    On or about July 11, 2017, and continuing on November 15, 2017, the parties agreeably mediated their disputes.  However, such mediation ended in impasse without any settlement.

"6.    All of the facts stated in the Petition for Arbitration to which this Affidavit is attached as Exhibit "B" are true and correct and within my personal knowledge.

"7.    The foregoing is all true and correct within my firsthand knowledge."

FURTHER AFFIANT SAYETH NAUGHT.

DAVID LEWANDOS

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this 29th day of November, 2017.

Notary Public, State of TEXAS

My commission expire

CAROL L HEREBIA
My Notary ID # 3877095
Expires February 8, 2021

Thomas M. Schumacher

Attorney at Law

Sherry Park Office Center
13330 Leopard St., Suite 2
Corpus Christi, Texas 78410
361.241.2393

Email: tmslawofc@aol.com

Fax: 361.242.9266

September 9, 2016

Clayton Homes (CMH Homes, Inc.)          <u>BY FAX @361.299.2022</u>
5858 Leopard Street
Corpus Christi, Texas 78408

Southern Energy Homes of Texas          <u>BY FAX @817.847.0332</u>
8702 Harmon Road
Fort Worth, Texas 76177

Re:  Mark Eugene Eller
     New Southern Energy Manufactured Home

Dear Sirs/Madam:

I represent Mr. Mark Eller. My client went to the Clayton Homes dealership in Corpus Christi to look at manufactured homes that it had for sale. Clayton Homes represented that Southern Energy Homes (which my client has now discovered is a subsidiary of Clayton Homes) could custom build a brand new 2016 Southern Energy manufactured home for him. At all times relevant to this transaction, Clayton was also acting as the agent for Southern Energy. Clayton and Southern Energy represented that the home would be custom built to my client's specifications. They represented that my client would be satisfied with the home and that you would keep coming back to remedy any problems until everything was constructed as promised. You promised that the home would be extremely energy efficient with the exterior walls constructed using 2" X 6" studs rather than 2" X 4" studs. You represented that the home would have high quality features, material and workmanship. You represented that the home would be engineered to last a lifetime. You represented that the home would be built with materials to designed for maximum strength and durability. You represented that the home would be inspected by third-party inspectors. You represented that the home would have high indoor air quality. Based upon these and other representations, and your silence about other matters, my client agreed to purchase the home for a cash price of $130,000.00, plus fees. He signed an installment contract with the dealership. That contract was assigned to, and is held by, Vanderbilt Mortgage and Finance.

**EXHIBIT "C"**

Clayton Homes
Southern Energy Homes
September 9, 2016
Page 2

My client paid for a slab to be designed and laid on the property specifically for this home at a cost of $10,000.00. The home was delivered on March 15, 2016. When the home was delivered, your delivery people dropped one side of the home into a ditch. This caused at least one section of the home to be twisted, which has resulted in a number of defects in the home since that date. On the delivery date, another section of the home was dragged directly over a corner of the slab foundation, causing it to break.

During the following two weeks, the home was supposed to be set up, including installation of the sheetrock as well as the air conditioner system and the hookup of the electrical, water and sewage.

In April, after you represented that the setup was complete, my client kept asking for a walk-through so that a punch list could be prepared. The owner or manager of Clayton Homes continued to change the date for the walk-through and it was never performed. My client then began informing you of some of the defects that he and his wife had noticed in the home.

Clayton Homes began trying to repair problems with the marriage line in the home as well as repairing cracks in the walls, touching-up the painting, completing cabinets under the island, and trying to reinstall a shower head that was installed incorrectly. Neither the dealer nor the manufacturer installed the missing dimmer switch (which was an upgrade) for the island lights nor was the hot water mixer valve in master bathroom repaired after it was installed backwards.

The following month, the light on the vent hood in the kitchen kept flickering till it eventually burned out. More cracks started to appear in the sheetrock and my client discovered that the television cable was installed improperly. In addition, the front door was still sticking. A contractor had tried to repair it but bent the door. The re-touching of the paint was still not completed, the adjustment of cabinet doors and drawers in the kitchen and both bathrooms was not completed and the ground fault switch in the kitchen stopped working and, when repaired, was installed upside down.

Clayton Homes
Southern Energy Homes
September 9, 2016
Page 3

Since my clients still did not have a punch list nor a walk-through, they paid $475.00 for an inspection of the house. A copy of the report prepared by the inspector has been provided to Southern Energy Homes so that it was and is aware of the additional repairs still needed. You are hereby notified of the defects listed in that report.

The deadbolt to the back door in the utility room still does not fully engage and the attempted repair was not done in a professional manner. There was also debris in the fireplace flue. The guest bathroom still has a broken light over the vanity. The toilets are loose in both bathrooms. The stove light is still flickering and burning out and my client and his wife were informed that the problem might be with the chip board.

The home has developed a condensation problem and a form of mold has developed in the guest bathroom. My client and his wife initially advised Jacqueline at Southern Energy Homes of the mold. She said that you could not send anyone to inspect and remedy for two to three weeks. Thus, your promise about your concern for air quality was one of many misrepresentations.

On June 28, 2016, a contractor with Southern Energy Homes sent a crew to inspect the condensation and mold in the guest bathroom. The crew attempted to clean the mold. One of those crew members ruined a new towel in that bathroom without the permission of my client or his wife.

By July 2, 2016, only four days later, my client and his wife again noticed condensation and mold forming. Since the Southern Energy Homes office was closed during the week of July 4ᵗ though July 8ᵗʰ, my client could not report the mold problem until the office reopened on July 11, 2016. On that date, my client's wife spoke with Jeff and Howard with Southern Energy regarding the condensation and mold returning in the guest bathroom. On July 13, 2016, Jacqueline called to let my clients know they were sending Wayne, another contractor, to the home to further inspect the condensation and mold on July 20, 2016. However, in the evening of July 18, 2016, Wayne called to let my client know that he would NOT be at their house on July 20, 2016; that Southern Energy Homes

Clayton Homes
Southern Energy Homes
September 9, 2016
Page 4

does not make his schedule; that HE makes his own schedule and that
he had other plans for July 20, 2016.  He said that he could come
to the home the following Saturday, which was not possible since my
client would not be home that weekend.  On July 19, 2016, my client
spoke with Southern Energy about the problem with the July 20th
appointment.    Southern Energy said that it would get another
contractor and would call back.

On July 20, 2016, my client received a call that Charles,
another contractor with Southern Energy Homes, would be at the home
sometime during the week of July 25 to repair the condensation
problem and the mold which was now in the utility room as well as
the guest bathroom.  My client was also told that Charles would
repair the vent hood in the kitchen and some other repairs that
were needed.  On July 25 through July 29,  Charles sealed off the
guest bathroom and the utility room in order to do the repairs.  He
removed the vent, cut out the ceiling area affected in the guest
bathroom,   removed   some   insulation   and   inspected   the   air
conditioning duct system.   Charles stated that the area was not
insulated as it should be and that some of the duct work was
sitting directly on the ceiling sheetrock.   He advised my client
to keep an eye on those areas.  He cut the sheetrock and put a new
air vent in the wall between utility room and dining area.  He cut
a hole in the roof of the home and then replaced that portion of
the roof.  In the utility room, he removed and replaced some of the
trim and the door frame due to the particle board being swollen
from condensation and having black mold under it. He installed some
new insulation in the attic, tried to repair the sheetrock in the
ceiling and installed a new vent.

Unfortunately, the attempted repairs did not work.  Less than
two weeks later - around August 1, 2016 - condensation and mold
formed again.  My client's wife advised Howard at Southern Energy
Homes of the reappearance of the condensation and mold in the home.
Howard basically stated that he did not believe her.  Therefore, on
August 5, 2016, my client e-mailed photos to Southern Energy of the
condensation and mold in the guest bathroom on each of the
following dates:   July 30, August 1 and August 3.   He was sent
these photos so that Southern Energy could see how quickly the mold
was developing.  On August 9, 2016,  Tracie with Southern Energy

Clayton Homes
Southern Energy Homes
September 9, 2016
Page 5

Homes called to let my client know that it was sending a specialist in condensation - Mr. Bob Baker from Louisiana - to inspect my client's home on Wednesday, August 17, 2016. Mr. Bob Baker came to my client's home and performed multiple tests. He prepared a report about the condensation and moisture problem in my client's house. He stated that there were numerous problems with the home which were causing the mold to develop. Mr. Baker said that he would send the report to Southern Energy Homes so it could make the repairs to my client's home.

Since that date, you have not sent anyone to remedy the mold and condensation problems. On August 30, 2016, the home began to leak when it was raining. When my client returned home that day, the particle board was damaged, separated and swollen and rainwater was in the sheetrock.

As a result of these problems with the home, my client's faith in the home has been shaken. He believes that he has been lied to about the home, the way it was constructed and the status of the repairs. He is worried about his health and the health of his wife as a result of being exposed to the mold.

The transaction described above was and is subject to the terms and provisions of the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code, Section 17.41, et seq (hereinafter called D.T.P.A.) During the course of the transaction, Clayton Homes and Southern Energy Homes violated the D.T.P.A. in many respects. You violated Section 17.46(b)(5) of the D.T.P.A. by representing that the home and your services had sponsorship, characteristics, uses and benefits which they did not have. You violated Section 17.46(b)(7) of the D.T.P.A. by representing that the goods and your services were of a particular standard, quality or grade when they were of another. You violated Section 17.46(b)(12) by representing that an agreement involved rights, remedies and obligations which it did not have or involve or which were prohibited by law. You violated Section 17.46(b)(24) of the D.T.P.A. by failing to disclose information about the goods and services which was known at the time of the transaction and the failure to disclose such information was intended to induce my

Clayton Homes
Southern Energy Homes
September 9, 2016
Page 6

client to enter into a transaction into which he would not have
entered if the information had been disclosed. You breached
express and implied warranties, in violation of Section 17.50(a)(2)
of the D.T.P.A. You also engaged in an unconscionable action or
course of action, in violation of Section 17.50(a)(3) of the
D.T.P.A.

As a result of your deceptive acts and practices, your
misrepresentations, your silence and your unconscionable course of
action, my client seeks a rescission of the transaction to purchase
the home. Please be advised that unless you tender the sum of
$23,436.70 - which constitutes the amount paid to date for the
home, plus the cost of the foundation which was laid specifically
for the weight and size of this home - plus reimburse him for any
payments made after this date, plus cancel the contract in exchange
for the manufactured home, plus pay $7,500.00 for his mental
anguish, plus pay a reasonable attorney's fee of $1,000.00 within
60 days, suit will be filed seeking a rescission, plus my client's
damages, plus additional damages allowed under the D.T.P.A., plus
attorney's fees and court costs. In light of the fact that my
client and his wife have had to live in the defective home with the
mold, he does not believe that there is any value for the time
spent in the home.

A copy of this letter is being sent to Vanderbilt since it is
the holder of the retail installment contract and it is subject -
as specifically stated in the contract - to all claims and defenses
that my client could assert against the seller of the home.

Sincerely yours,

Thomas M. Schumacher
Attorney at Law

TMS/awo
cy: Vanderbilt Mortgage and Finance, Inc.   BY FAX @877.857.2530
    P.O. Box 4007
    Maryville, TN 73804

# WELLS & CUELLAR
### ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

440 LOUISIANA, SUITE 718
HOUSTON, TEXAS 77002
TELEPHONE (713) 222-1281
FAX (713) 237-0570
www.wellscuellar.com

**D. BRENT WELLS**
MEDIATOR/ARBITRATOR

BOARD CERTIFIED - CONSUMER LAW
AND COMMERCIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

CERTIFIED - CREDITORS' RIGHTS LAW
AMERICAN BOARD OF CERTIFICATION

**JAMES E. CUELLAR**

**JEFFREY D. STEWART**

**ADAM R. SWONKE**

October 6, 2016

**E-MAIL and**
**CERTIFIED/RRR**

Mr. Thomas M. Schumacher
Sherry Park Office Center
13330 Leopard Street, Suite 2
Corpus Christi, Texas 78410

Re:   Mark E. Eller ("Consumer"); new HUD-Code Manufactured Home with
Serial Nos. SFW018083TX A&B ("Manufactured Home").

Dear Tom:

It has been awhile since I have worked with you, but since you and I have productively resolved a number of manufactured housing disputes in the past, I hope that history bodes well for efficiently and constructively resolving this one. Based upon past experience, it will probably not surprise you to learn that my firm and I are Consumer Law and Dispute Resolution counsel for both Al/Tex Homes, Inc. d/b/a Southern Energy Homes of Texas ("Southern Energy") and CMH Homes, Inc. d/b/a Clayton Homes – Corpus Christi #1055 ("Clayton"), respectively the manufacturer and the retail seller of the above-referenced Manufactured Home. I have your notice letter of September 9, 2016, on behalf of the referenced Consumer, and this is a response for both Southern Energy and Clayton pursuant to §§17.505 (Notice; Inspection) and 17.5051 (Mediation) of the Texas Deceptive Trade Practices - Consumer Protection Act ("DTPA"). Coincidentally, my firm and I also represent Vanderbilt Mortgage and Finance, Inc. ("VMF"), which holds the Consumer Loan Note and Security Agreement undertaken by your client, but VMF has no record of receiving your letter.

My initial investigation discloses that, although there may be issues remaining to be corrected in the Manufactured Home, neither Southern Energy nor Clayton have knowingly violated their warranties, or the DTPA, as you allege. Instead, my clients have conscientiously dealt with the Consumer in good faith and without any misrepresentations. Furthermore, Southern Energy and Clayton remain ready, willing, and able to repair any issues that may still exist to insure full compliance of the Manufactured Home with state installation standards and federal HUD-Code safety and construction standards, in keeping with the legally-required warranties for new HUD-Code homes. It does not serve any of my clients' goals or purposes for your client to be dismayed with his purchase, so we are motivated to try to make him happy. However, the rescission

**EXHIBIT "D"**

Mr. Thomas M. Schumacher
October 6, 2016
Page 2

remedy which you demand is disproportionate to any alleged harm and not legally viable. Not only has your client waived rescission by forgoing the statutory option for same and continuing to occupy and use the Home for over six months, but there is an adequate remedy at law (*i.e.* repairs or damages measured by reasonable cost of repairs) precluding the equitable remedy (*i.e.* rescission or cancellation of the transaction). It is well settled that rescission is only available in cases of complete failure of consideration (which is certainly not the case here). See *Isaacs v. Bishop*, 249 S.W.3d 100, 109 (Tex. App.—Texarkana 2008, pet. denied); *Athans v. Rossi*, 240 S.W.2d 492, 495 (Tex. Civ. App.—Fort Worth 1951, writ ref's n.r.e.).

Please indulge me in also clarifying the following fundamentals:

1.      As you know, both my clients and yours have already brought some third-party expertise to the issues in the Manufactured Home, *i.e.* Randy Farrar on your side, and Bobby Parks (*not* "Bob Baker") on our side, but probably not enough. I need to get some other third-party experts into the Manufactured Home soon, not for the sake of just sparring with you, but to insure that we have fully and correctly diagnosed all issues of which your letter complains. Since you go on at length about everything from a dimmer switch to apparent mold or mildew in the guest bathroom, and do not distinguish between issues which have already been repaired and those which have not, I need to get a handle on what remains to be addressed, and to prioritize what may be serious and significant as opposed to that which is trivial and beyond my clients' responsibility. Please work with me to give such additional experts reasonable access, and I will share with you their reports.

2.      Both Southern Energy and Clayton have express warranty obligations which they intend to meet, but there are no implied warranties (such as you vaguely reference on the last page of your letter) for a new HUD-Code Manufactured Home because §1201.155, Tex. Occ. Code., disclaims any such warranties by statute, once the aforementioned statutory express warranties are given.

3.      Your Consumer is not entitled to litigate with my clients, as you threaten, because Mr. Eller is committed to the Binding Dispute Resolution Agreement enclosed, which eschews litigation in favor of arbitration. Southern Energy, Clayton, and VMF are all entitled to rely upon Mr. Eller's contractual commitment.

If you are interested in solving this problem, rather than perpetuating and escalating it, as I hope and believe you probably are, then the first thing that needs to happen is an inspection of the Manufactured Home as envisioned by both DTPA §17.505(a) and §1201.355, Tex. Occ. Code. Therefore, as you will see by the enclosed Inspection Request, which is incorporated herein by this reference, I have already called for an inspection of the Home by the neutral state administrative

Mr. Thomas M. Schumacher
October 6, 2016
Page 3

agency with jurisdiction and expertise, the Texas Department of Housing and Community Affairs ("TDHCA"). Please be receptive to contact by the TDHCA inspector and involve me in scheduling the inspection so that we can make it genuinely productive to facilitate a collaborative resolution. The TDHCA inspection will enlighten all concerned as to the severity or triviality of the multitude of complaints your letter raises, and the degree, if any, to which the Manufactured Home may or may not deviate from the warranted standards.

Following the aforesaid TDHCA inspection, the next step will be mediation of any remaining dispute between our clients with a mutually-agreeable mediator, as envisioned by both DTPA §17.5051 and paragraph C of the enclosed Binding Dispute Resolution Agreement. Please let me know three (3) experienced Corpus Christi-area attorney-mediators in whom you have confidence, and I will select one with whom we can schedule a mediation now to occur promptly after the TDHCA inspector issues the ensuing inspection report and my clients complete any warranty orders which may be mandated.

As you will see by paragraph D of the Binding Dispute Resolution Agreement, if the aforementioned inspection and mediation do not yield a complete resolution, then binding arbitration is an available forum for ultimate disposition of our clients' differences. Mediation is a condition precedent to such arbitration. However, a lawsuit at the Courthouse is *not* an available option since your client is bound "to mandatory, binding arbitration... of all Claims that are not resolved in Mediation." In any event, I hope you will not make the mistake of launching a lawsuit as your letter threatens, because I would then be forced to make a motion to compel arbitration as the parties agreed, and would ultimately seek to have you and your client held responsible to reimburse both Southern Energy and Clayton for their reasonable attorneys' fees associated with disregard of the arbitration obligation.

Let's keep each other informed about any scheduling contacts from the TDHCA, and please let me hear from you soon about proposed mediators. Best wishes.

Sincerely,

WELLS & CUELLAR, P.C.

By: L. Brent Wells for
SOUTHERN ENERGY and CLAYTON

7417x002.lat
Enclosure

DocuSign Envelope ID: 10968183-FD55-404B-97    BC30A925174

1156638

## BINDING DISPUTE RESOLUTION AGREEMENT

The Parties (defined below) agree to resolve all disputes pursuant to the terms of this Binding Dispute Resolution Agreement (the "Agreement"). The Parties are defined as the buyer (whether one or more) who signs below (referred to hereinafter as "Buyer") and CMH Homes, Inc., its subsidiary(s) (e.g., CMH of KY, Inc.), and their/its agents, assignees, successors in interest, and employees (collectively referred to as "Seller"). Buyer and Seller agree that this Agreement also applies to and governs the rights of intended beneficiaries of this Agreement, who include the following additional Parties: (i) manufacturers of the Home (defined below); (ii) contractors, including, without limitation, contractors involved in delivery and set-up of Buyer's Home; (iii) title companies and closing attorneys involved in any transaction made in connection with Buyer's Home purchase; (iv) all who sign or benefit from the Contract (defined below); (v) anyone claiming an interest in the Home, (vi) property owners receiving a benefit from the Contract, the Home, or use of the Home, and (vii) any occupants of the Home (referred to hereafter collectively as "Beneficiaries") (Buyer, Seller, and Beneficiaries may be referred to herein as "Party" or "Parties").

A.   Scope of the Agreement: This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home (including, but not limited to, the Retailer Closing Agreement, any Purchase or Sales Agreement, buyer's order, supplemental invoice, and other instruments and agreements whereby Seller purports to convey or receive any goods or services to or from Buyer or Beneficiaries (collectively, the "Contract")), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity and enforceability of the Contract (collectively referred to as the "Claim" or "Claims"). Notwithstanding anything herein to the contrary, the jurisdiction of the Arbitrator, including objections with respect to the existence, scope, and validity of this Agreement, shall be determined solely by a court of competent jurisdiction, and not by the Arbitrator. The Parties agree that Claims must be brought on an individual basis and not on a representative basis as a class action, which involves the aggregation of similar individual Claims of Buyer, Beneficiaries, and/or other persons into a single proceeding. The Parties expressly agree not to arbitrate any Claims as a class action, a representative action, a collective action, or a private attorney-general action.

B.   Exclusion for Consumer Credit Transactions Secured by a Dwelling: Notwithstanding anything herein to the contrary, nothing in this Agreement shall be construed to require mandatory mediation or binding arbitration of any disputes arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling.  Disputes arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling are specifically excluded from the definition of "Claim" or "Claims."

C.   Agreement to Mediate: All Claims that cannot be settled through direct discussions and negotiation shall be submitted first to mediation with a mutually agreeable mediator ("Mediation"). If the Parties cannot agree on a mediator within a reasonable time, then the Mediation shall be administered by the American Arbitration Association ("AAA") under its Home Construction Arbitration Rules and Mediation Procedures in effect at the time Mediation is requested (the "Rules"). A copy of the Rules may be obtained, free of charge, from the AAA, on the internet at www.adr.org, by calling 800-778-7879, or by writing to - American Arbitration Association, 120 Broadway, New York, NY 10005. The Parties agree to mediate in good faith. The Parties agree that information exchanged in the Mediation shall be held confidentially. The requirement of formally filing a Claim with a tribunal, to satisfy an applicable statute of limitations, shall be tolled during the mediation process, with said tolling period to begin on the date that any Party notifies the other(s) in writing of its intent to mediate (either through a mutually agreeable mediator or the AAA). The tolling period shall end on the date that either Party notifies the other in writing following mediation that the Parties have reached an impasse. In the event the Parties are not successful in resolving their dispute in mediation, then the Parties agree to submit their Claims to binding arbitration. Mediation of Claims is a mandatory condition precedent to arbitration or a court proceeding. An agreement to resolve the Claims in mediation shall be enforceable in any court having jurisdiction thereof.

D.   Agreement to Arbitrate: The Parties agree to mandatory, binding arbitration ("Arbitration") of all Claims that are not resolved in Mediation. Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present evidence to the Arbitrator, both in writing and through witnesses. Arbitration proceedings are less formal than court trials. Other rights that the Parties have in court may not be available in Arbitration. The information that can be obtained in discovery from each other or from third persons in Arbitration is generally more limited than in a lawsuit. An arbitrator will decide the case by issuing a written decision called an "award."



1156638

E.    Conducting Arbitration: Any Party to this Agreement may commence arbitration at any time following Mediation, subject to applicable statute of limitations and section "C." of this Agreement. The Arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and to the extent not otherwise preempted by the FAA, by applicable state laws, including common law; (b) this Agreement; and (c) the Rules. The Parties acknowledge and agree that the Home contains component parts limitation manufactured outside of the state where the Home is sold and delivered; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce. To commence arbitration, a Party must submit the dispute to AAA via mail, fax or through AAA's WebFile Service. If the terms of this Agreement and the Rules conflict, then the terms of this Agreement shall control to the extent of the conflict. The Arbitration will be conducted by a single person (the "Arbitrator") and selected in accordance with the "Level 3" selection process of the Rules irrespective of the amount of the Claims. The "Level 3" Administrative Fees and Arbitrator Compensation Schedule shall apply, irrespective of the amount of the demand or counter-demand asserted by any Party. The Arbitrator shall be impartial and his or her conduct shall be governed by the most current Code of Ethics for Arbitrators in Commercial Disputes, promulgated by the AAA and the American Bar Association. The Parties agree that any Arbitration commenced under this Agreement shall be administered under the Regular Procedures of the Rules, as opposed to the Expedited Hearing Procedures. With respect to the exchange of information, arbitration hearing, inspections, and interviews as defined by the Rules, the Parties agree that the Rules applicable to "Level 3" disputes shall apply to all Claims, irrespective of the amount of the Claims. At the election of the Parties (and at the expense of the electing Party or Parties), the Arbitration may be recorded and transcribed by a court reporter. Judgment upon the award rendered may be entered in any court having jurisdiction over the Parties to the award. The Parties agree that information exchanged in the Arbitration shall be held confidentially, and shall not be used in other arbitrations or court proceedings. Except as may be required by law, neither a Party, nor an Arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of all Parties. All statutes of limitation that would otherwise apply to Claims in a judicial action shall apply to the Arbitration of Claims under this Agreement. The Arbitrator shall apply applicable substantive law and shall honor assertions of privilege recognized at law and consider defenses that a court could consider. With respect to any award for punitive damages, the Arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding punitive damages, the Arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the Arbitrator must state the precise amount of any punitive damages award. Before the award becomes final, the Arbitrator must also conduct a post-award review of any punitive damages, allowing the Parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the Arbitration is located. Any ruling based on this post-award review must be set forth in writing with a reasoned explanation. The Arbitrator shall not have the power to depart from substantive law, including due process principles, in connection with an award. The Arbitrator's findings, reasoning, decision, and award shall be set forth in a detailed writing and must be based upon the laws governing this Agreement.

Except as expressly provided in section "K." of this Agreement, any Claim or counterclaim (including compulsory or permissive under law) of a party must be made in the Arbitration, and the failure to bring such Claim or counterclaim shall constitute a waiver of and a bar to bringing such Claim or counterclaim in a later Arbitration or action in court.

If Buyer or Beneficiaries have Claims against others (each, a "Third Party") related to or arising from Claims against the Seller(including, but not limited to (i) the design, construction, or manufacture of the Home, (ii) the advertising and/or sale of the Home, (iii) the delivery or the installation of the Home, and (iv) insurance covering the Home or Buyer (each, a "Related Claim")), then the Parties agree to consolidate the Arbitration of such Claims against Seller, brought on an individual basis, with the Arbitration of any and all Related Claims, brought on an individual basis, into one Arbitration to be governed by this Agreement, *provided, however,* that the Third Party must agree to be joined in the Arbitration of the Related Claims under this Agreement. The claims of Third Parties are not subject to the mandatory Mediation requirement set forth in section "C." above. If any Third Party does not agree to be joined in the Arbitration of its Related Claim, then Arbitration under this Agreement shall proceed without that Third Party. Buyer and Beneficiaries agree not to arbitrate any Related Claims as a class action, a representative action, a collective action, or a private attorney-general action. The consolidation of these Related Claims will be administered by the Arbitrator initially selected as described in this section "E."

F.    Fees and Costs: The fees and costs imposed by the Arbitration Administrator associated with the Arbitration, including the Arbitrator's fees, shall be paid in accordance with the Rules and this Agreement. Buyer and Beneficiaries may request that the Arbitration Administrator reduce or waive Buyer's and Beneficiaries' fees, or that Seller voluntarily pay an additional share of the fees and costs (however, such request does not obligate Seller to do so), based upon Buyer's and Beneficiaries' financial circumstances or the nature of such Claim. Unless inconsistent with applicable law or the Rules, the Parties will pay for their own arbitration costs (including fees and/or expenses of their own attorneys, experts, and witnesses), regardless of which party prevails in the arbitration.

1156638

G.    Location: The Arbitration will be conducted, in one or more hearings, at a place within the federal judicial district where Buyer's or Beneficiary's physical address is located, or in the federal judicial district within which a lawsuit between the Parties is pending and in which a motion to compel arbitration is made, or at any other place mutually acceptable to the Parties. If the Parties agree, then all or a portion of the Arbitration may be conducted by telephone conference. If the Parties cannot agree on the location of the Arbitration, then the Arbitrator shall have the power to decide where the Arbitration will be conducted.

H.    Collective Actions Waiver: The Parties expressly waive the right to participate as a representative or member in a class action, a representative action, a collective action, a private attorney-general action, or otherwise join the Parties' Claims, including those claims expressly excluded in section "B." of this Agreement, with those of any other person. The Parties agree that if the above limitation on proceedings is deemed to be unenforceable or interpreted to not prevent a collective or class action, then such collective or class action shall proceed in a court of law and not in arbitration.

I.    Joinder of Arbitrations: Except as provided expressly in section "E." of this Agreement with respect to the Arbitration of Buyer's and Beneficiaries' individual Related Claims, the Parties agree to waive any right to consolidate or join any individual arbitration with the arbitration of others.

J.    Enforcement and Appeal of Award: The award and judgment by the Arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the Parties. The Arbitrator's decision may be judicially reviewed on all grounds set forth in 9 U.S.C. § 10 and other applicable state law. Once final, an award may be enforced as a court judgment in accordance with federal or state law.

K.    Exceptions: Notwithstanding any other provision of this Agreement, the Parties agrees that Seller may use judicial process (filing a lawsuit): (a) to obtain possession of the Home where Seller has not been paid in full as agreed under the Contract or to otherwise enforce Seller's ownership interest in the Home, or enforce any related mortgage or deed of trust in Seller's name, and (b) to seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence, location, condition, or productive use of the Home or other property. Notwithstanding the Rules, the Parties also expressly agree that this Arbitration Agreement does not apply to any Claims where the amount in controversy is less than the jurisdictional limit of the small claims court in the jurisdiction where Buyer resides, **provided, however,** that the Parties agree that any such small claims Claim may only be brought on an individual basis and not as a class action. Bringing a court proceeding described in this section "K.", however, shall not be a waiver of any Party's right to compel Arbitration of any other Claims, including Buyer's counterclaim(s) in a suit brought by Seller.

L.    Severability: If it is determined that any paragraph or provision in this Agreement (with the exception of the Collective Actions Waiver in section "H.") is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Agreement and the remainder of this Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision or any other provision of the Contract or Agreement, if a court of competent jurisdiction determines the Collective Actions Waiver in section "H.", to be illegal, invalid, unenforceable, or interpreted to not prevent any of the actions set forth in section "H.", then the Parties agree that such waiver shall not be severed and that this Agreement shall be void in its entirety.

M.    Survival of Agreement: This Agreement will survive and continue in full force and effect notwithstanding assignment, assumption, rescission, cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, unless otherwise agreed to in writing by the Parties. In addition, the Parties understand and acknowledge that the rights afforded to Seller under this Agreement survive any assignment of the Contract by Seller and that Seller can enforce this Agreement in the event a Claim arises after the assignment of the Contract.

N.    Rules of Construction: If there is a disagreement on the interpretation of this Agreement, this Agreement shall be construed to require Mediation and Arbitration, rather than to defeat them, except for any disputes arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling, class actions, representative actions, collective actions and private attorney-general actions, which the Parties agree not to mediate or arbitrate. The Parties waive the rule of construction that requires a tribunal to construe a vague or ambiguous provision against the drafting party. This Agreement is the only agreement between the Parties regarding dispute resolution, and takes the place of and supersedes any other dispute resolution agreements to the extent they are inconsistent with this Agreement.

O.    Entire Agreement: This Agreement encompasses the entire agreement of the Parties with respect to the subject matter of this Agreement, and supersedes all previous understandings and agreements between the Parties, whether oral or written.

DocuSign Envelope ID: 10968183-FD55-404B-97   5C30A925174

1156638

     P.    Court Waiver: For Claims subject to the terms of section "A.", the Parties hereby expressly and irrevocably waive any right to a trial by judge or jury. This waiver will remain enforceable even if any portion of this Agreement is otherwise found to be unenforceable. The Parties agree that this waiver is made knowingly, willingly, and voluntarily. This waiver does not apply to Claims filed in small claims court, pursuant to the provisions of section "K".

     Q.    Jury Waiver: With respect to those claims expressly excluded in section "B.", the Parties hereby expressly and irrevocably waive any right to a trial by jury. This waiver will remain enforceable even if any portion of this Agreement is otherwise found to be unenforceable. The Parties agree that this waiver is made knowingly, willingly, and voluntarily.

     R.    NOTICE: BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT. BUYER AND SELLER FURTHER INTEND TO DIRECTLY BENEFIT AND BIND ALL BENEFICIARIES TO THIS AGREEMENT. IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE PARTIES HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, WILLINGLY AND VOLUNTARILY.

DocuSigned by:
*Mark Eugene Eller*
0C0610CCC631482...

Buyer    MARK EUGENE ELLER        2/25/2016

                                                        Date

Buyer                                          Date

Buyer                                          Date

Buyer                                          Date

DocuSigned by:
*DAVID LEWANDOS*
F31FD8668ADC472...

Seller    CLAYTON HOMES  CORPUS CHRISTI       2/25/2016

                                                        Date